IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LESEAN D. HARDY,<br><br>Defendant. | Case No. CR08-0077<br><br>REPORT AND RECOMMENDATION |

## TABLE OF CONTENTS

*I.*    *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*II.*    *PROCEDURAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.*    *ISSUE PRESENTED.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*IV.*    *RELEVANT FACTS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*V.*    *DISCUSSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     *A.*    *The Legality of the Pat-Down Search.* . . . . . . . . . . . . . . . . . . 3
     *B.*    *Fruit of the Poisonous Tree Argument.* . . . . . . . . . . . . . . . . . 6

*VI.*    *CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*VII.*    *RECOMMENDATION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## I. INTRODUCTION

On the 29th day of December 2008, this matter came on for hearing on the Motion to Suppress (docket number 9) filed by the Defendant on December 15, 2008. The Government was represented by Assistant United States Attorney Stephanie Rose. Defendant Lesean D. Hardy appeared personally and was represented by his attorney, John W. Hofmeyer III.

## II. PROCEDURAL BACKGROUND

On November 18, 2008, Defendant Lesean D. Hardy was charged by Indictment (docket number 1) with possession of a firearm as a felon. Defendant entered a plea of not guilty and trial is scheduled before Chief Judge Linda R. Reade on January 20, 2009. On December 15, 2008, Defendant timely filed the instant Motion to Suppress.[1]

## III. ISSUE PRESENTED

Defendant claims that the attempted pat-down search on November 12, 2008, violated the Fourth Amendment; and the fruits of that search, including discovery of a loaded handgun, should be suppressed.

## IV. RELEVANT FACTS

At approximately 4:38 p.m., on November 12, 2008, Defendant was a passenger in a silver mini-van which was stopped by Cedar Rapids police for a burned out headlight and an improperly fastened license plate.[2] At the time of the stop, there were three individuals in the vehicle. Defendant occupied the back seat behind the driver and another individual occupied the front passenger seat.

Officers approached the vehicle and asked the occupants for identification. Defendant and the driver produced valid identification. The front passenger, however, had no identification. The officers asked the front passenger for his name, age, and birth date. The front passenger gave the officers false information. The front passenger's given age was inconsistent with the birth date he gave the officers. Officers removed the front

---

[1] On December 10, 2008, Defendant filed Notice of Intent to Plead Conditionally (docket number 8). In his Notice, Defendant "gives the Court notice that he is willing to plead guilty conditionally . . . preserving his right to file a Motion to Suppress and to assert violation of his constitutional rights through the pat-down search initiated without articuable [sic] facts that he was armed and dangerous." At the time of the hearing, the parties had not finalized a plea agreement and a plea change hearing had not been scheduled.

[2] Prior to the traffic stop, the patrol officers had been alerted by narcotic officers that they should stop the mini-van if they observed any traffic violations, because the narcotic officers had just completed a drug buy from one of the individuals in the vehicle.

passenger from the vehicle, patted him down for officer safety, and escorted him to the squad car for further investigation.

After the front passenger was removed from the mini-van, Defendant climbed from the rear seat behind the driver's seat into the front passenger seat. Shortly after Defendant moved to the front passenger seat, a Cedar Rapids canine officer arrived on the scene. The officers sought permission from the driver to search the mini-van with the drug dog, and the driver consented. At approximately 5:05 p.m., the canine officer asked the driver to exit the vehicle and patted him down for officer safety.

At approximately 5:07 p.m., the canine officer asked Defendant to exit the vehicle and place his hands on the vehicle for a pat-down search. Defendant exited the mini-van, briefly placed his hands on the vehicle, and then immediately took off running away from the officers. The officers pursued Defendant for two or three blocks before catching him. When the officers caught up with Defendant, they observed him holding a gun in front of him and pointed in their direction. The officers removed the gun from Defendant, placed Defendant stomach-down on the ground, and handcuffed him. Defendant's gun was loaded with one round in the chamber.

## V. DISCUSSION

Defendant argues that the attempted pat-down search by the canine officer was not supported by a reasonable, articulable suspicion that he was armed and dangerous, and, therefore, was violative of the Fourth Amendment. Defendant further argues that since the improper pat-down search resulted in the discovery of a gun, the evidence of the gun is "fruit of the poisonous tree."

### A. The Legality of the Pat-Down Search

The Fourth Amendment protects persons "against unreasonable searches and seizures." U.S. Const. amend. IV. "A traffic stop constitutes a 'seizure' within the meaning of the Fourth Amendment." *United States v. Fuse*, 391 F.3d 924, 927 (8th Cir. 2004). While a passenger may challenge the legality of a traffic stop, *Brendlin v.*

*California*, ___ U.S. ___, 127 S. Ct. 2400 (2007), Defendant has not done so here.[3] The United States Supreme Court has held that a police officer may, as a matter of course, order a passenger of a lawfully stopped car to exit the vehicle. *Maryland v. Wilson*, 519 U.S. 408, 410 (1997). Therefore, Defendant could be ordered out of the vehicle in this case as a matter of course.[4]

Defendant argues, however, that officers lacked the authority to conduct a pat-down search because they did not have specific and articulable facts supporting a reasonable belief that Defendant was armed and dangerous. In a case filed on December 23, 2008, the Eighth Circuit Court of Appeals confirmed that a passenger may be searched during a traffic stop based upon reasonable suspicion that he may be armed or dangerous, without the necessity that he be reasonably suspected of other criminal activity. *United States v. Oliver*, ___ F.3d ___, 2008 WL 5333835 (8th Cir.). Accordingly, the Court must determine whether the officers had reasonable suspicion to believe that Defendant may be armed and dangerous.

In determinating whether there is a reasonable basis to believe a subject is armed and dangerous, courts view the facts under an objective standard, and consider the totality of the circumstances known to the officer at that time. *United States v. Ellis*, 501 F.3d

---

[3] Any challenge to the traffic stop would be unavailing. "Generally, a traffic 'stop must be supported by at least a reasonable, articulable suspicion that criminal activity' has occurred or is occurring." *Fuse*, 391 F.3d at 927 (quotation and citation omitted). The Eighth Circuit Court of Appeals has determined that even a minor traffic violation creates probable cause to stop a vehicle. *Id.*; *see also United States v. Sallis*, 507 F.3d 646, 649 (8th Cir. 2007) (the observation of even a minor traffic violation, provides a police officer with probable cause to conduct a traffic stop); *United States v. Coney*, 456 F.3d 850, 855-56 (8th Cir. 2006) (same). Here, the police officers observed the vehicle had defective equipment. Accordingly, the Court finds that the officers had probable cause to stop the vehicle.

[4] Even if a passenger could not be ordered out of a vehicle during a routine traffic stop, however, this stop grew into something more when the front passenger provided a false identification. An investigative stop "can grow out of a traffic stop so long as the officer has reasonable suspicion of criminal activity to expand his investigation, even if his suspicions were unrelated to the traffic offense that served as the basis of the stop." *United States v. Gomez Serena*, 368 F.3d 1037, 1041 (8th Cir. 2004) (citing *Long*, 320 F.3d at 799-800). Here the officers acted properly in asking the occupants of the vehicle for identification and confirming their identification. Because the front seat passenger gave the police officers a false identification, it was reasonable for the officers to expand their investigation, including the consent search of the vehicle by the driver.

958, 961 (8th Cir. 2007). It is not necessary for the police officer to be "absolutely certain that the individual is armed, rather the issue in determining the legitimacy of the search is 'whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *United States v. Abokhai*, 829 F.2d 666, 670 (8th Cir. 1987) (quoting *Terry v. Ohio*, 392 U.S. 1, 37 (1968). *See also United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir. 2002).

Defendant argues that the officers lacked specific and articulable facts supporting a reasonable belief that he was armed and dangerous. Defendant maintains that the officers had:

> no prior contact with [him]. [He] did nothing prior to his seizure and commencement of the frisk to arouse suspicion. He did not appear nervous. He was simply sitting in the back seat,[5] minding his own business, when the officer removed him from the car and began the frisk.

(*See* Defendant's Brief in Support of Motion to Suppress at 7.) The Government argues that there are two separate justifications that support the officers' belief that Defendant could be armed and dangerous. First, one of the vehicle's occupants was known to be involved in drug activities. Second, the officers found it strange and suspicious that Defendant moved from the back seat to the front passenger seat after the front passenger was removed from the vehicle.

At an investigatory stop, when an individual is suspected of drug involvement, it is reasonable for a police officer to believe that the individual may be armed and dangerous. *United States v. Robinson*, 119 F.3d 663, 667 (8th Cir. 1997). *See also United States v. Bustos-Torres*, 396 F.3d 935, 943 (8th Cir. 2005) ("Because weapons and violence are frequently associated with drug transactions, it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction."). Here, officers knew that an occupant of the vehicle had

---

[5] The record is clear that Defendant was not "sitting in the back seat" when he was asked to exit the vehicle. It is undisputed that Defendant moved from the back seat to the front passenger seat after the front passenger was removed to the squad car for further investigation of his identity.

just been involved in a drug transaction, and they observed Defendant move from the back seat to the front seat. Based on the totality of the circumstances, the Court determines that a reasonably prudent person in such a situation would be warranted in the belief that his or her safety was in danger. *See Abokhai*, 829 F.2d at 670; *Ellis*, 501 F.3d at 961. Therefore, the Court finds that the officer was justified in attempting to perform a pat-down search of Defendant for officer safety.

## B. *Fruit of the Poisonous Tree Argument*

For the reasons set forth above, I believe it is unnecessary for the District Court to address Defendant's "fruit of the poisonous tree" argument, since the officer's attempted pat-down search was justified for officer safety. Nonetheless, the Court will address the issue in case the District Court disagrees with its analysis on the attempted pat-down search.

In this case, the officer asked Defendant to exit the vehicle and place his hands on the mini-van for a pat-down search. Defendant got out, briefly placed his hands on the vehicle, and then immediately took off running away from the officers. When the officers caught Defendant, he was brandishing a gun in their direction. Defendant argues that it was "predictable and foreseeable" to run away from the officers to avoid discovery of the gun. Specifically, Defendant argues that "[t]he flight was related to the illegality [of the attempted pat-down search], and would not have occurred but for the officer's illegal frisk attempt."[6] Thus, Defendant contends that the evidence of the gun should be suppressed under the "fruit of the poisonous tree" doctrine.

The Government argues that "defendant's flight and defendant's decision to plainly brandish the gun - allowing officers to lawfully view the weapon - are both exceptions to the poisonous tree analysis."[7] Specifically, the Government argues that under the "independent source" doctrine, Defendant's brandishing the gun at the officers allowed

---

[6] *See* Defendant's Brief in Support of Motion to Suppress at 9.

[7] *See* Government Memorandum in Support of Resistance to Defendant's Motion to Suppress at 6.

6

them to independently discover the gun regardless of the attempted pat-down search. The Government also argues that under the "attenuated connection" doctrine, defendant's flight and brandishing of the firearm were not predictable responses to the officer's attempt to pat him down, and therefore, rid the taint of any constitutional violation. The Government concludes that the "fruit of the poisonous tree" doctrine does not require the suppression of the evidence seized from Defendant.

In the landmark case of *Wong Sun v. United States*, 371 U.S. 471 (1963), the Court concluded that evidence obtained by "exploitation" of illegal actions by the police is "fruit of the poisonous tree" and subject to the exclusionary rule.

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*Id.* at 487-488.

In *United States v. Dickson*, 64 F.3d 409, 410 (8th Cir. 1995), the Eighth Circuit Court of Appeals outlined three exceptions to the "fruit of the poisonous tree" doctrine:

> The Supreme Court, however, has recognized three analytically distinct exceptions to this doctrine. . . . Under the 'independent source' doctrine, the challenged evidence will be admissible if the prosecution can show that it derived from a lawful source independent of the illegal conduct. . . . Second, challenged evidence will be admissible under the 'attenuation' doctrine, even though it did not have an independent source, if the causal connection between the constitutional violation and the discovery of the evidence has become so attenuated as to dissipate the taint. . . . Third, challenged evidence will be admissible under the 'inevitable (or ultimate) discovery' doctrine if the prosecution can establish that it inevitably would have been discovered by lawful means without reference to the police misconduct.

*Id.* (quoting *Hamilton v. Nix*, 809 F.2d 463, 465-66 (8th Cir. 1987) (en banc)).

"The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." *Nix v. Williams*, 467 U.S. 431, 443 (1984). It is unnecessary to exclude challenged evidence under the "independent source" doctrine, because "the police misconduct is not even a 'but for' cause of its discovery." *Hamilton*, 809 F.2d at 465. Thus, the critical inquiry is "whether the challenged evidence was obtained from lawful sources and by lawful means independent of the police misconduct." *Id.* at 467 (citations omitted).

Under the "attenuation" doctrine, challenged evidence is admissible "if the causal connection between the constitutional violation and the discovery of the evidence is so attenuated as to rid the taint." *United States v. Reinholz*, 245 F.3d 765, 779 (8th Cir. 2001). In determining whether the taint is purged, the Court "must consider: (1) the presence of intervening circumstances; (2) the temporal proximity between the illegal search or seizure and the intervening act; and (3) the purpose and flagrancy of the official misconduct." *United States v. O'Connell*, 408 F. Supp. 2d 712, 725 (N.D. Iowa 2005) (citing *United States v. Becker*, 333 F.3d 858, 862 (8th Cir. 2003)).

The Court finds that both the "independent source" and "attenuation" doctrines are applicable in this case. First, even if the officer's attempted pat-down search was improper, the police discovered the gun independent of any misconduct because Defendant ran away from the officers and brandished the gun at them when he was caught. That is, the officers discovered the gun as a result of Defendant displaying the gun at them, rather than by an allegedly improper pat-down search. *See Hamilton*, 809 F.2d at 467. The Court rejects Defendant's argument that his flight was a "predictable" response to a pat-down search. Second, under the factors set forth in *O'Connell*, the Court finds that (1) the officers act of attempting to pat-down Defendant for officer safety served a reasonable purpose and was not flagrantly improper, and (2) the Defendant's immediate reaction to the attempted pat-down search, fleeing from the officers and brandishing a gun at them when he was caught, is an intervening circumstance which purges the taint of the alleged illegal pat-down search. *See O'Connell*, 408 F. Supp. 2d at 725. Accordingly, I believe

that the "fruit of the poisonous tree" doctrine is inapplicable under the "independent source" doctrine and the "attenuation" doctrine. Therefore, Defendant's motion to suppress should be denied.

## VI. CONCLUSION

The Court concludes that the police officers did not violate Defendant's Fourth Amendment rights during the traffic stop on November 12, 2008.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **DENY** the Motion to Suppress (docket number 9) filed by the Defendant on December 15, 2008.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1)(B), that within ten (10) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *Defendant is reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if Defendant is going to object to this Report and Recommendation, he must promptly order a transcript of the hearing held on December 29, 2008.*

DATED this 5th day of January, 2009.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA