**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

UNITED STATES OF AMERICA,

           Plaintiff,

vs.

LESEAN HARDY,

           Defendant.

No. 08-CR-77-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   RELEVANT PRIOR PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . 2

III.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.  Objections to Findings of Fact . . . . . . . . . . . . . . . . . . . . . . . . 3
         1.   Ordered out of van . . . . . . . . . . . . . . . . . . . . . . . . . . 3
         2.   Consent to search . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    B.  Objections to Mixed Findings of Fact and Application of Law . . . . . . . 5
         1.   Whether a reasonably prudent person would be warranted
             to believe that his or her safety was in danger . . . . . . . . . . . 5
         2.   Whether flight was a predictable response to an illegal frisk . . 8
            a.   Legality of the frisk . . . . . . . . . . . . . . . . . . . . 8
            b.   Predictability of flight as response . . . . . . . . . . . . . 9
         3.   Omissions from findings of fact . . . . . . . . . . . . . . . . . . . 11
            a.   Time delay . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            b.   Furtive movement . . . . . . . . . . . . . . . . . . . . . . 12
            c.   Unconcerned attitude . . . . . . . . . . . . . . . . . . . . 12
            d.   Attempted frisk . . . . . . . . . . . . . . . . . . . . . . . 13
            e.   Number of officers . . . . . . . . . . . . . . . . . . . . . . 13
            f.   Criminal activity . . . . . . . . . . . . . . . . . . . . . . . 13
            g.   Defendant's demeanor . . . . . . . . . . . . . . . . . . . . 14
            h.   Defendant's flight . . . . . . . . . . . . . . . . . . . . . . 14
            i.   Defendant's activities . . . . . . . . . . . . . . . . . . . . 15
            j.   Officer statements . . . . . . . . . . . . . . . . . . . . . . 15

C. *Objections to Legal Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
   1. *The legality of the pat-down search* . . . . . . . . . . . . . . . . . **16**
   2. *Fruit of the poisonous tree* . . . . . . . . . . . . . . . . . . . . . . . **19**

V. *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**

## I. INTRODUCTION

The matter before the court is Defendant Lesean Hardy's Objections ("Objections") (docket no. 25) to United States Magistrate Judge Jon S. Scoles's Report and Recommendation ("Report and Recommendation") (docket no. 15). Judge Scoles recommends that the undersigned deny Defendant's Motion to Suppress ("Motion") (docket no. 9).

## II. RELEVANT PRIOR PROCEEDINGS

On November 18, 2008, a grand jury returned a one-count Indictment (docket no. 1), which charged Defendant with being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Indictment also contains a forfeiture provision. That same date, Defendant pleaded not guilty.

On December 15, 2008, Defendant filed the Motion. On December 23, 2008, the government filed a Resistance (docket no. 13). On December 29, 2008, Judge Scoles held a hearing ("Hearing") on the Motion. Attorney John W. Hofmeyer III represented Defendant, who was personally present. Assistant United States Attorney Stephanie Rose represented the government. On January 5, 2009, Judge Scoles issued the Report and Recommendation. On January 7, 2009, Defendant entered a conditional plea of guilty. On January 12, 2009, Defendant filed the Objections. On January 22, 2009, the court accepted Defendant's conditional plea of guilty. The Objections and Report and Recommendation are fully submitted and ready for decision.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *see also* Fed. R. Crim. P. 59(b)(3) (stating "[t]he district judge must consider de novo any objection to the magistrate judge's recommendation"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) (stating a judge "may accept, reject, or modify the recommendation receive further evidence, or resubmit the matter to the magistrate judge with instructions"). The Eighth Circuit Court of Appeals has held that it is reversible error for the district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600.

## IV.  ANALYSIS

Defendant raises numerous objections to the Report and Recommendation.  Upon de novo review of the record in its entirety, the court shall overrule all of them.  For the reasons set forth below, the court adopts the Report and Recommendation in its entirety.

### A.  Objections to Findings of Fact

Defendant raises two objections to Judge Scoles's findings of facts.  The court considers each of these objections, in turn.

#### 1.  Ordered out of van

First, Defendant objects to Judge Scoles's finding that law enforcement officers asked him to exit the van during a traffic stop initiated by the Cedar Rapids Police Department (CRPD).  Defendant asserts that CRPD officers ordered and did not ask him to exit the van and place his hands on it for a pat-down search.

At the Hearing, Officer Jeffries, one of the law enforcement officers assisting in the stop, testified that "[Officer Fear] approached the passenger side and asked [Defendant] to step out."  Transcript ("Tr.") (docket no. 26) at 18.  The court viewed the squad car

video (Government Exhibit 1) capturing the stop; however, the court was not able to hear what Officer Fear said to Defendant. The court notes that Officer Jeffries was seated inside the squad car at that time and may have been unable to hear the conversation between Defendant and Officer Fear. The court cannot determine from the video alone whether Defendant was ordered or asked out of the van; however, it appears Officer Fear's interactions with both Defendant and the driver were conversational in nature.

The court finds that the record supports Judge Scoles's finding and shall overrule this objection. Alternatively, the court overrules this objection because whether Defendant was asked or ordered out of the van is irrelevant. A police officer may, as a matter of course, order a passenger out of a lawfully stopped vehicle. *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997) ("[A]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop.").

## 2.    *Consent to search*

Second, Defendant objects to Judge Scoles's finding that Officer Fear asked the driver for permission to search the van and the driver consented to a search. Defendant asserts that this finding is supported solely by hearsay testimony and is not adequately reflected in the record. The "search" to which Defendant refers is law enforcement's use of a canine sniff test of the van's exterior.

Whether the driver consented to the canine sniff is irrelevant. First, walking a narcotics detection dog around the outside of a vehicle is not a search within the meaning of the Fourth Amendment. *United States v. Olivera-Mendez*, 484 F.3d 505, 511 (8th Cir. 2007) ("A dog sniff of the exterior of a vehicle does not constitute a search."); *see also United States v. Place*, 462 U.S. 696, 707 (1983) (holding that subjecting luggage to a sniff test by a trained narcotics detection dog was not a search within the meaning of the Fourth Amendment). A canine sniff by a well-trained narcotics detection dog can only expose contraband. *Place*, 462 U.S. at 707. "Official conduct that does not 'compromise

4

any legitimate interest in privacy' is not a search subject to the Fourth Amendment."

*Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (quoting *United States v. Jacobsen*, 466 U.S. 109, 123 (1984)). "[G]overnmental conduct that *only* reveals the possession of contraband 'compromises no legitimate privacy interest.'" *Id.* (emphasis in original). In sum, "[c]onducting a dog sniff [that] [does] not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner" does not "infringe" on a person's "constitutionally protected interest in privacy." *Id.* Thus, the driver's consent was not needed for Officer Fear to conduct the canine sniff. Furthermore, the canine sniff did not occur until after Defendant exited the van and fled. Accordingly, the court shall overrule this objection.

### B. Objections to Mixed Findings of Fact and Application of Law

Defendant raises three objections to Judge Scoles's findings of fact and application of law. The court considers each of these objections, in turn.

### 1. Whether a reasonably prudent person would be warranted to believe that his or her safety was in danger

Defendant objects to Judge Scoles's finding that a reasonably prudent person in the officers' position would be warranted in believing that his safety was in danger. Defendant asserts that law enforcement had no evidence showing he was involved in a drug transaction or that he engaged in "furtive movements." Objections at 1-2. Furthermore, Defendant asserts that the fact the officers conducted the search without backup indicates "no real concern for safety." *Id.* at 2.

The CRPD narcotics unit informed Officers Jeffries and Furman that one of the van's occupants had recently participated in a drug transaction. When CRPD officers initially approached the van, the passenger in the front seat provided false information regarding his identity. While officers were attempting to confirm the front seat passenger's identity, the passenger in the back seat of the van moved into the front seat, bent down to the side and appeared to be reaching for, looking for or hiding something.

Defendant's argument is well taken. CRPD officers stopped the van in a residential area. The officers did not note anything suspicious when they approached the van. The CRPD narcotics unit had informed them that one of the occupants had been involved in a drug transaction; however, they were not told the transaction involved a weapon. The officers spent a substantial amount of time trying to verify the identity of the front-seat passenger. They left the van's door open after escorting the front seat passenger out of the van. They allowed a pedestrian to approach the van and speak with its occupants. Finally, officers waited nearly five minutes before approaching the van after Defendant moved to the front seat.

These facts may suggest that the officers did not fear for their safety or believe others were in danger. However, that is not the standard pursuant to which the court analyzes these facts. "Courts are required to apply an objective test to resolve the question whether reasonable, articulable suspicion justified a protective search." *United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)); *United States v. Ellis*, 501 F.3d 958, 961 (8th Cir. 2007) (In determining whether there is a reasonable basis to believe a subject is armed and dangerous, courts view the facts "under an objective standard" and consider the "totality of the circumstances as known to the officer at that time."); *see also United States v. Plummer*, 409 F.3d 906, 909 (8th Cir. 2005) ("The test for reasonableness is an objective one . . . . [A] police officer's subjective motivation is irrelevant to our Circuit's objective reasonableness analysis.") (citations omitted). As discussed above, the officers provided a reasonable, objective basis for their concern. Officer Jeffries testified that the occupants were patted down for officer safety.

Although the squad car video indicates the officers seemed unconcerned in their

dealings with the van,[1] the court finds that a reasonably prudent person under these circumstances would be warranted in believing his safety or that of others was in danger. After all, the CRPD narcotics unit had informed the officers that one of the occupants was involved in a drug transaction. When an individual is suspected of drug involvement, it is reasonable for a police officer to believe that the individual may be armed and dangerous. *United States v. Robinson*, 119 F.3d 663, 667 (8th Cir. 1997); *see also United States v. Bustos-Torres*, 396 F.3d 935, 943 (8th Cir. 2005) ("Because weapons and violence are frequently associated with drug transactions, it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction.").

Second, traffic stops are "inherently dangerous." *United States v. Shranklen*, 315 F.3d 959, 962 (8th Cir. 2003) (citing *United States v. Menard*, 95 F.3d 9, 11 (8th Cir. 1996)). "The Supreme Court has frequently noted the inherent danger traffic stops pose to police officers and the consequent likelihood that minimally intrusive weapons searches will be reasonable." *Menard*, 95 F.3d at 11; *see e.g. Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977) ("We have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile."). Furthermore, the "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car." *Wilson*, 519 U.S. at 414.

Third, the front seat passenger provided inconsistent information regarding his

---

[1] Nearly half an hour passed between the initiation of the stop of the van and the time Officer Fear arrived to pat-down the driver and Defendant. During that time, Officers Jeffries and Furman engaged in casual conversation in the squad car, left the passenger side door of the van open and allowed the driver and Defendant to remain in the van. The officers also allowed a woman who purported to be the sister of one of the passengers to approach the van and obtain keys from one of the passengers. Defendant moved to the front seat and sat there for nearly five minutes before law enforcement approached the van again.

identity. Because the front seat passenger provided inconsistent information regarding his identity, creating enhanced suspicion, the officers removed him from the van and extended the stop.

Fourth, Defendant engaged in furtive movements inside the van. Defendant moved from the back seat to the front passenger seat. After switching seats, Defendant bent over and reached behind himself. His actions indicated he was looking for, reaching for or attempting to hide something.

These facts support a finding that a reasonably prudent person in such a situation would be warranted in believing his safety was in danger. Accordingly, the court shall overrule this objection.

## 2. *Whether flight was a predictable response to an illegal frisk*

Defendant objects to Judge Scoles's finding that "flight was not a predictable response as a result of the illegal frisk." Objections at 2.

### a. *Legality of the frisk*

First, the court notes that Defendant's characterization of the pat-down as "illegal" is inaccurate. *Id.* Officer Fear's attempt to pat-down Defendant was not an illegal frisk. Officer Fear had the authority to search Defendant based upon a reasonable suspicion that he was armed and dangerous. *United States v. Oliver*, 550 F.3d 734, 737 (8th Cir. 2008) ("[P]assengers may be searched during a traffic stop based upon reasonable suspicion they may be armed and dangerous . . . ."). When an individual is suspected of drug involvement, it is reasonable for a police officer to believe that the individual may be armed and dangerous. *Robinson*, 119 F.3d at 667; *see also Bustos-Torres*, 396 F.3d at 943. Here, the officers (1) knew that an occupant of the van had recently been involved in a drug transaction, (2) were aware that one of the occupants gave them false information regarding his identity and (3) observed Defendant move from the back seat to the front seat, then bend and reach. Based on the totality of the circumstances, a reasonably prudent

person in such a situation would be warranted to believe that his or her safety was in danger. *See United States v. Abokhai*, 829 F.2d 666, 670 (8th Cir. 1987) ("The officer need not be absolutely certain that the individual is armed, rather the issue in determining the legitimacy of the search is 'whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" (citations omitted)). Accordingly, the officers were justified in attempting to perform a pat-down search of Defendant. Defendant was not subject to an illegal frisk.

### b.    Predictability of flight as response

Second, even if the officers subjected Defendant to an illegal frisk, flight was not a predictable response to the frisk. While not a model of clarity, Defendant essentially argues that the fruits of the attempted pat-down search are not admissible because the officers "'exploited [the] illegal [search] by creating a situation in which [the] criminal response [was] predictable,' such as creating a situation where the criminal will flee." *United States v. Green*, 111 F.3d 515, 522 (7th Cir. 1997) (quoting *United States v. Garcia-Jordan*, 860 F.2d 159, 161 (5th Cir. 1988)).

"The exclusionary rule prohibits the admission of physical and testimonial evidence gathered illegally." *United States v. Reinholz*, 245 F.3d 765, 779 (8th Cir. 2001) (citing *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963)). *Reinholz* provides:

> There are however, three exceptions to the exclusionary rule. Under the independent source doctrine, the challenged evidence is admissible if it came from a lawful source independent of the illegal conduct. Under the attenuated connection doctrine, the challenged evidence is admissible if the causal connection between the constitutional violation and the discovery of the evidence is so attenuated as to rid the taint. Under the inevitable discovery doctrine, the challenged evidence is admissible if it inevitably would have been discovered by lawful means without reference to the police misconduct.

*Id.* (Internal citations, quotation marks and punctuation omitted). Judge Scoles found that, even if the attempted pat-down search was improper, the challenged evidence is still

admissible under both the independent source and attenuation doctrines. The undersigned agrees.

Presumably, Defendant argues that the challenged evidence is not admissible under the attenuation doctrine because Defendant's flight was not an intervening circumstance but rather the predictable result of the officer's attempted search. In determining whether the taint is purged under the attenuation doctrine, the court considers: (1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances and (3) the purpose and flagrancy of the official misconduct. *United States v. Becker,* 333 F.3d 858, 862 (8th Cir. 2003); *see also Brown v. Illinois*, 422 U.S. 590, 603-04 (1975); *United States v. O'Connell*, 408 F. Supp. 2d 712, 725 (N.D. Iowa 2005).

With respect to the first factor, the court finds that the officers acquired the evidence within minutes of the attempted search. Defendant ran as soon as Officer Fear attempted to pat him down. Defendant was apprehended within a few blocks. When the officers caught up with Defendant, he was pointing a gun in the officers's direction. This is how the officers came to know of the gun.

Second, Judge Scoles found that Defendant's flight operated as an intervening circumstance. Defendant, relying on *Green*, argues that his flight was not an intervening circumstance because it was a predictable response to an illegal search. 111 F.3d at 522. This argument is without merit. The officers attempted to pat-down Defendant because they were legitimately concerned for the safety of themselves and those around them. The officers were not "exploiting" the search so Defendant would run and they would discover new evidence. *Id*. Defendant is not entitled to suppression because he chose to commit a new crime. *See e.g.* Iowa Code § 719.1 (2009) ("A person who knowingly resists or obstructs anyone known by the person to be a peace officer . . . in the performance of any act which is within the scope of the lawful duty or authority of that officer . . . commits a simple misdemeanor."); *see also United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir.

1995) ("[A] defendant's response to even an invalid arrest or *Terry* stop may constitute independent grounds for arrest."). Even if flight was a predictable response, the act that actually led to the officers's discovery of the gun, that is, Defendant pointing the firearm at them, was not a predictable or acceptable response.

Third, Judge Scoles found that Officer Fear's attempt to pat-down Defendant for officer safety served a reasonable purpose and was not flagrantly improper. Defendant does not directly object to this finding but rather insinuates that the officers created a situation in which Defendant would flee. Officer Jeffries testified that the attempted pat-down search was for officer safety. The court finds Officer Jeffries to be a credible. The court agrees with Judge Scoles that the attempted pat-down in this case was reasonable under the circumstances and not flagrantly improper. Accordingly, the court shall overrule this objection.

### 3. *Omissions from findings of fact*

Defendant next objects to the Report and Recommendation on the grounds that Judge Scoles omitted ten facts from the findings of fact. Each alleged omission is discussed, in turn.

#### a. *Time delay*

First, Defendant asserts that Judge Scoles should have included the fact that the "substantial delay in time from the time Defendant changed positions in the van indicates that the officers did not see Defendant change positions or that the officers were not reasonably concerned for their safety as a result of the movement." Objections at 2.

At the hearing, Attorney Hofmeyer specifically asked Officer Jeffries if he saw Defendant change positions:

Q. And my question to you is do you remember seeing him climb from the back seat to the front seat?

A. Yes, I do.

11

Tr. at 25. The court finds Officer Jeffries to be credible. The record also indicates that Officers Jeffries and Furman were waiting for a narcotics officer to arrive, not because they were not concerned for their safety. Accordingly, the court shall overrule this objection.

### b. Furtive movement

Next, Defendant asserts that Judge Scoles should have included the fact that "[m]oving from the back seat to the front seat was not a 'furtive' movement, where one is trying to conceal contraband or weapons, and the video does not show any such furtive movements." Objections at 2.

The court disagrees with Defendant's characterization of the evidence. The squad car video fully and accurately depicts Defendant's movements. First, Defendant moved from the back seat behind the driver to the front passenger seat. Then, Defendant bent down and reached towards the seat behind the driver. He appeared to be looking for, reaching for or hiding something. Officer Jeffries testified that it is "very unusual on a traffic stop [for] someone [to] move[] seats, especially from the rear to the front." Tr. at 17. The court finds that the squad car video depicts "furtive movements" made by Defendant. Accordingly, the court shall overrule this objection.

### c. Unconcerned attitude

Third, Defendant asserts that Judge Scoles should have included the fact that "[t]he officer's movements, in turning their backs on Defendant before the frisk, and otherwise exhibiting an unconcerned attitude, show that there in fact was no reasonable concern for officer safety." Objections at 2.

As discussed in Part IV. B. 1. *supra*, the court has already considered the officer's relaxed approach in assessing the reasonableness of the officers's concern for safety. Defendant adds nothing new to this analysis. Accordingly, the court shall overrule this objection.

### d.    Attempted frisk

Fourth, Defendant asserts that Judge Scoles should have included the fact that "the canine officer's manner of frisking Defendant . . . indicate[d] that the officers were not reasonably concerned for their safety." *Id*. at 3.  Specifically, Defendant argues that "the fact that Defendant was able to take off as he did, with other officers present, indicates a lack of the level of vigilance one would expect if Defendant was reasonably suspected of being armed and dangerous." *Id.*

As discussed above, the court has already fully considered the nature of the officers's actions.  Defendant adds nothing new for the court to consider.  Furthermore, this is a poorly reasoned analysis of the facts.  Accordingly, the court shall overrule this objection.

### e.    Number of officers

Fifth, Defendant asserts that Judge Scoles should have included the fact that the number of officers present at the stop indicates a low risk to officer safety.  Defendant notes that "this is not a case where a lone officer is outnumbered where there is a greater risk to officer safety." *Id*. at 3.

The court is mindful of the number of officers present at the stop and has fully considered the reasonableness of the officers's actions.  Again, Defendant adds nothing new for the court to consider and merely re-casts the same objections made earlier. Accordingly, the court shall overrule this objection.

### f.    Criminal activity

Sixth, Defendant asserts that Judge Scoles should have included the fact that "[a]t the time of the frisk, there was no indication Defendant was engaged in any criminal activity." *Id.*

Defendant is simply incorrect.  The CRPD narcotics unit alerted Officers Jeffries and Furman that one of the van's occupants was known to have been involved in a drug

transaction. Although the CRPD narcotics unit provided Officers Jeffries and Furman with a description, they were relying on information from the CRPD narcotics unit and were not certain exactly which occupant was involved in the drug transaction. Defendant correctly asserts that the officers eventually deduced the front seat passenger, not Defendant, was involved in the drug transaction. However, a passenger may be searched during a traffic stop based upon reasonable suspicion that he may be armed and dangerous, without the necessity that he be reasonably suspected of engaging in criminal activity. *Oliver*, 550 F.3d at 737 (citing *Knowles v. Iowa*, 525 U.S. 113, 118-19 (1998)). Accordingly, the court shall overrule this objection.

### g. *Defendant's demeanor*

Seventh, Defendant asserts that Judge Scoles should have included the fact that "Defendant displayed no nervousness and the officers observed no unusual or peculiar behavior . . . [or] bulges or other indications that Defendant was armed and dangerous . . . ." Objections at 3.

This assertion is not supported by the record and is irrelevant. In fact, Officer Jeffries described Defendant's movement from the back seat to the front passenger seat as "very unusual." Tr. at 17. There is no evidence either way as to whether Defendant appeared nervous or whether officers noticed a bulge. Accordingly, the court shall overrule this objection.

### h. *Defendant's flight*

Eighth, Defendant asserts that Judge Scoles should have included the fact that the "fair inference from [Defendant's flight] is that [it] was an effort to avoid detection of the weapon then hid[den] in a [c]onstitutionally protected private area on Defendant's person." Objections at 3. The proposed inference could not be a finding of fact. At best, the proposed inference would merely be a poorly reasoned analysis of the facts. Judge Scoles accurately described Defendant's flight. Accordingly, the court shall overrule this

objection.

### i.     Defendant's activities

Ninth, Defendant asserts that Judge Scoles should have included the fact that "[t]here [was] no evidence Defendant himself was engaged in drug activity or otherwise engaged in criminal activity." Objections at 4. Defendant asserts that he was "simply a co-passenger" of the person involved in the drug transaction. *Id.* Defendant is incorrect.

As Judge Scoles noted, Officers Furman and Jeffries knew that one of the van's occupants had recently participated in a drug transaction. Whether or not the officers determined that the front seat passenger was the person of interest is not pertinent to the court's analysis. Defendant was in the van with a person that officers knew to have recently participated in a drug transaction. Officers do not have to be "absolutely certain that the individual is armed . . . ." *Abokhai*, 829 F.2d at 670. As discussed in Part IV. B. 1 *supra*, the court, looking at the totality of the circumstances, *Ellis*, 501 F.3d at 961, has already determined that a "reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger," *Terry*, 392 U.S. at 37. Accordingly, the court shall overrule this objection.

### j.     Officer statements

Finally, Defendant asserts that Judge Scoles should have included the fact that, during the course of the stop, one of the officers stated "that they 'had nothing' other than [the front seat passenger] lying to them." Objections at 4. Defendant asserts that, "[b]y the officer's own admissions, they lacked articulable facts at that point in time, and nothing substantively changed thereafter to justify Defendant's frisk." *Id.*

Defendant is correct in that one of the officers made this statement. However, Defendant's analysis of the statement is erroneous. Again, the court evaluates the circumstances using an objective standard. *Ellis*, 501 F.3d at 961. The objective factors justifying the stop and attempted pat-down frisk are fully and accurately set forth above.

Clearly, the officers had something upon which they could base their justification for the frisk. At the time the statement was made, the officers had credible information from a CRPD narcotics officer that one of the van's occupants had committed a crime. The front seat passenger also provided false information regarding his identity. The officers had reasonable justifications for expanding their investigation to include the frisk of Defendant. Accordingly, the court shall overrule this objection.

### C. Objections to Legal Analysis

Defendant raises two sets of objections to Judge Scoles's legal analysis. The court considers each of these sets of objections, in turn.

#### 1. The legality of the pat-down search

Defendant raises nine objections to Judge Scoles's analysis of the legality of the attempted pat-down search.

First, Defendant objects to Judge Scoles's reliance on *Oliver*, 550 F.3d 734, because Attorney Hofmeyer "disagrees" with it. Objections at 4. The Eighth Circuit Court of Appeals's decision in *Oliver* is binding precedent. Accordingly, the court shall overrule this objection.

Second, Defendant asserts that the officers "did not have sufficient articulable facts to support a reasonable belief that Defendant was armed and dangerous." Objections at 5. The court has addressed this argument repeatedly throughout the instant order. The court has fully set forth its reasons for finding that the officers had a reasonable suspicion that Defendant may be armed and dangerous. Accordingly, the court shall overrule this objection.

Third, Defendant asserts that "[t]he fact that one of the [van's] occupants was involved in drug activities[] does not have anything to do with the frisk of Defendant." Objections at 5. Defendant is incorrect. When examining the stop and attempted pat-down, the court does not look solely at the actions of Defendant; rather, the court is to

evaluate the totality of the circumstances.  *Ellis*, 501 F.3d at 961.  "'[W]eapons and violence are frequently associated with drug transactions.'"  *Robinson*, 119 F.3d at 667 (quoting *United States v. Brown*, 913 F.2d 570, 572 (8th Cir. 1990)).  Although Defendant was not actually the individual that the CRPD narcotics unit suspected of personally participating in the drug transaction, Defendant was in the same van as the suspect shortly following the transaction.  Furthermore, Defendant engaged in furtive movements while the van was stopped.  The court agrees with Judge Scoles, that based on the totality of the circumstances, a reasonably prudent person in such a situation would be warranted in believing that his safety was in danger.  Accordingly, the court shall overrule this objection.

Fourth, Defendant argues that he did not engage in "furtive activities."  Objections at 5.  Defendant concedes that moving from the back seat to the front seat is unusual, but Defendant argues that it is not indicative of criminal activity.  The court disagrees.  Defendant moved from the seat behind the driver to the front passenger seat.  After Defendant switched seats, he bent down and reached back behind him.  His actions indicated that he was looking for, reaching for or hiding something.  Further, Officer Jeffries testified that it is "very unusual on a traffic stop [for] someone [to] move[] seats, especially from the rear to the front."  Tr. at 17.  The court finds that Defendant's movements were more than unusual; they were suspicious and indicative of criminal activity.  Accordingly, the court shall overrule this objection.

Fifth, Defendant argues that because the officers waited eight minutes between noticing Defendant's furtive movements and attempting the frisk, Defendant's activities did not indicate he was armed, dangerous or involved in criminal activity.  Under the totality of the circumstances, this does not weigh substantially in the court's analysis of the reasonableness of the officers' belief that they were in danger.  The court uses an objective test to resolve the question of whether a reasonable, articulable suspicion justified a

protective search. *Roggeman*, 279 F.3d at 577. As stated above, the officers have provided sufficient objective reasons for the attempted pat-down search. Accordingly, the court shall overrule this objection.

Sixth, Defendant argues that, after Defendant engaged in the furtive movements, "the officers turned their back[s] on [Defendant] and did not act as if he was armed and dangerous." Objections at 6. The court disagrees with Defendant's characterization of the officers's actions. After viewing the squad car video, the court finds that neither Officer Fear nor Officer Furman turned their backs on Defendant or acted as if they were not concerned for their safety.

The court also finds that, although Officer Jeffries briefly turned his back to Defendant, he did not act as thought he was not concerned for his safety. At the time of the stop, Officer Jeffries had only been working for the CRPD for six months. He took most of his actions at the direction of the other officers. After Defendant's furtive movements, Officer Jeffries walked between the van and squad car, consulted with Officer Furman, and walked back to the squad car. During this time, his back was briefly to Defendant and the van. Officer Jeffries's actions do not demonstrate a lack of concern for safety but, more likely, inexperience. Accordingly, the court shall overrule this objection.

Seventh, Defendant argues that the government failed to present evidence that the officers (1) asked Defendant why he moved or (2) took "steps to dissuade any possible suspicion . . . before engaging in the frisk." Objections at 6. Defendant asserts that "the officers had an obligation to do only what was necessary to address [their suspicions]." *Id.*

Defendant provides no legal authority for this position. As the court has discussed throughout the instant order, the officers had the authority to conduct a pat-down search of Defendant. Accordingly, the court shall overrule this objection.

Eighth, Defendant argues that "[t]he fact officers can order a passenger out of a

lawfully stopped vehicle[] does not give the officers the right to frisk passengers as a matter of course, without articulable facts affording a reasonable suspicion that the passenger is armed and dangerous . . . ." *Id.* at 6-7. Defendant mis-characterizes the record. The officers did not, as a matter of course, attempt to frisk Defendant. As discussed throughout the instant order, the officers provided articulable facts supporting a reasonable belief that their safety was in danger. Accordingly, the court shall overrule this objection.

Ninth, Defendant argues that, "[c]onsidering the totality of the circumstances . . . a reasonably prudent person would not be warranted in belief that his safety was in danger[.]" *Id.* at 7. In support of this argument, Defendant sets forth six factors that the court has already rejected throughout the instant order. Accordingly, the court shall overrule this objection.

In light of the foregoing, the court overrules Defendant's objections to Judge Scoles's analysis of the legality of the attempted pat-down search.

### 2.    *Fruit of the poisonous tree*

Defendant raises ten objections to Judge Scoles's analysis of the fruit of the poisonous tree doctrine.

First, Defendant argues again that his flight was intended to avoid discovery of the gun and was a predictable response to the attempted pat-down search. The court has previously rejected this argument. As discussed repeatedly throughout the instant order, the attempted pat-down search was lawful. Furthermore, the assertion that Defendant's flight was a predictable response to a stop and attempted pat-down search is completely without merit. Accordingly, the court shall overrule this objection.

Defendant's second, third and fourth objections relate to Judge Scoles's finding that even if the frisk was illegal, the evidence is nevertheless admissible under the independent source exception to the exclusionary rule. Specifically, Defendant argues that "discovery

of the gun did not come from 'an independent source' since Defendant's flight was not independent of the illegal frisk, but rather closely related to it and in actuality caused by it." *Id.* at 8. Defendant asserts that "[t]he [i]ndependent [s]ource [d]octrine allows admission of evidence discovered by means wholly independent of the [c]onstitutional violation." *Id.* (emphasis omitted). Defendant argues that, under this standard, the "discovery of the gun was not []wholly independent[] of the illegal frisk, but rather closely related in time and causation." *Id.*

"The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." *Nix v. Williams*, 467 U.S. 431, 443 (1984). "The independent source doctrine teaches us that the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred." *Id.* "The critical inquiry under the independent source doctrine is whether the challenged evidence was obtained from lawful sources and by lawful means independent of the police misconduct." *Hamilton v. Nix*, 809 F.2d 463, 467 (8th Cir. 1987) (citing *Segura v. United States*, 468 U.S. 796, 805 (1984)).

Defendant argues that the officers did not obtain the gun by lawful means independent of the police misconduct. However, the Eighth Circuit Court of Appeals has held "that a defendant's response to even an invalid arrest or *Terry* stop may constitute independent grounds for arrest." *Dawdy*, 46 F.3d 1427 at 1431 ("[A]ssuming *arguendo* that [the officer's] initial stop and arrest of [the defendant] were invalid, [the defendant's] resistance provided independent grounds for his arrest, and the evidence discovered in the subsequent searches of his person and his automobile is admissible.");[2] *but see United*

---

[2] *Dawdy* also notes:

(continued…)

*States v. Baldwin*, 114 F. App'x 675, 682 (6th Cir. 2004) (holding the independent source doctrine did not apply where the challenged evidence was discovered prior to the defendant's flight.).

Even if the attempted frisk was illegal, the officers discovered the gun by means wholly independent of the alleged violation. Defendant's response allowed officers to independently discover the gun regardless of the attempted pat-down search. Defendant ran from police, thereby creating an independent basis for arrest. *See* Iowa Code § 719.1 (2009). Additionally, the officers did not even need to search Defendant to discover the gun because Defendant chose to brandish the gun at the officers. The officers discovered the gun as a result of Defendant displaying the gun at them rather than through an allegedly improper search. The court finds that Judge Scoles completely and accurately analyzed Defendant's claims under the independent source doctrine. Accordingly, the court shall overrule these objections.

Defendant's fifth and sixth objections to Judge Scoles's analysis of the fruit of the poisonous tree doctrine relate to Judge Scoles's finding that, even if the frisk was illegal, the evidence is nevertheless admissible under the attenuation exception to the exclusionary rule. In a nutshell, Defendant argues: "discovery of the gun [was] not attenuated or removed sufficiently from the illegal frisk to dissipate the taint [of the illegal frisk] but

---

[2](…continued)
"[S]everal courts consider resistance to even an illegal arrest to be grounds for a second, legitimate arrest. *See United States v. Nooks*, 446 F.2d 1283, 1288 (5th Cir. 1971) (holding that where the nexus between the original arrest and search had been attenuated by the defendant's attempt to flee, the fruits of the search were not attributable to the original arrest) . . . .; *United States v. Waupekenay*, 973 F.2d 1533, 1538 (10th Cir. 1992) (holding that evidence of a separate, independent crime initiated against police officers in their presence after an illegal entry or arrest will not be suppressed under the Fourth Amendment)[.]"
46 F.3d at 1430-31.

rather discovery was closely related in time and causation." Objections at 9.

The court has already evaluated the applicability of the attenuation exception to the exclusionary rule in Part IV. B. 2. *supra*. Using the elements set forth in *Brown*, 422 U.S. at 603-04, the court found that, even if the attempted pat-down search was illegal, the challenged evidence is still admissible under the attenuation exception to the exclusionary rule. For the same reasons set forth in Part IV. B. 2. *supra*, the court shall overrule these objections.

Seventh, Defendant argues that suppressing the challenged evidence "allow[s] officers to indirectly discover what they sought through illegal means as a result of a [d]efendant taking actions to protect . . . a [c]onstitutionall[y] protected area." Objections at 9. Further, Defendant argues that, "[i]f the government is allowed to discover indirectly through a [d]efendant's flight to avoid the gun's discovery that which the illegal frisk sought to discover, illegal frisks will be encouraged in hopes [d]efendants will flee . . . ." *Id*. Defendant did not provide legal support for this poorly reasoned argument.

"[T]he exclusionary rule is a judicially created remedy rather than a personal constitutional right." *Stone v. Powell*, 428 U.S. 465, 495 n. 37 (1976). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 129 S. Ct. 695, 702 (2009). "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* Suppression in this case would not serve the purpose of the exclusionary rule. The attempted pat-down search was proper. The suggestion that officers would encourage a suspect to flee is illogical. Suppression, in this case, would not deter misconduct but would limit an officer's ability to protect the safety of him or herself and others  Accordingly, the court shall overrule the objection.

Defendant's eighth, ninth and tenth objections to Judge Scoles's analysis of the fruit of the poisonous tree doctrine relate to whether Defendant's flight was an intervening circumstance. Defendant states that, "[j]ust because the weapon was not discovered in Defendant's acquiescence to the illegal frisk does not mean there is no causal connection between the illegal frisk and ultimate discovery of the gun." Objections at 10. Further, Defendant argues that the government has offered no other reason for Defendant's flight other than to avoid an illegal frisk.

The court has found throughout the instant order that Defendant's flight was an intervening event. Defendant never "acquiesced" to the frisk; rather, he fled almost as soon as Officer Fear attempted the frisk. The court does not doubt that Defendant ran to avoid the pat-down search, however, this does not justify Defendant's flight. Furthermore, this does not change the fact that Defendant chose to pull the gun and brandish it at the officers. Defendant's flight was an improper response to a lawful attempted pat-down search, and, as such, it constituted an intervening event for the purpose of the exclusionary rule.

In light of the foregoing, the court overrules Defendant's objections to Judge Scoles's analysis of the fruit of the poisonous tree doctrine.

## V. CONCLUSION

In light of the foregoing analysis, **IT IS ORDERED THAT**:

(1)     The Objections (docket no. 25) are **OVERRULED**; and

(2)     The Report and Recommendation (docket no. 15) is **ADOPTED**.

**IT IS SO ORDERED.**

**DATED** this 17th day of June, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA